796 F.2d 1355
 Raye HOWE, personal representative, of Claude A. Howe for
himself and all others similarly situated,
Plaintiff-Appellant/Cross-Appellee,
v.
H.G. BAKER, Gordon G. Oldham, Jr. and The Florida Department
of Highway Safety and Motor Vehicles,
Defendants,J. Eldredge Beach and Ralph
Davis,
Defendants-
Appellees/Cross-
Appellants.
 No. 85-3571.
 United States Court of Appeals,
Eleventh Circuit.
 Aug. 14, 1986.
As Amended Aug. 28, 1986.
 
 Ben R. Patterson, Tallahassee, Fla., for plaintiff-appellant/cross-appellee.
 Mitchell D. Franks, Chief Trial Atty., Bruce A. Minnick, Asst. Atty. Gen., Tallahassee, Fla., and Martin J. Campbell, Asst. State Atty., Tavares, Fla., for defendants-appellees/cross-appellants.
 Appeals from the United States District Court for the Northern District of Florida.
 Before GODBOLD, Chief Judge, HILL, Circuit Judge, and LYNNE*, Senior District Judge.
 GODBOLD, Chief Judge:
 
 
 1
 Howe was a Highway Patrol Officer stationed in Lake County, Florida. Oldham, the state attorney in Lake County, in a letter to Howe's supervisor, Beach, stated that because of various problems he and other members of his office had had with Howe, he seriously questioned Howe's credibility and would no longer file any cases in which Howe was the arresting officer. One of the problems Oldham referred to was a meeting between Baker, an investigator with the state attorney's office, and Howe at which Howe allegedly used abusive language and indicated that he was unwilling to cooperate with the state attorney's office. Oldham's office subsequently refused to file informations in five of Howe's cases.
 
 
 2
 After Oldham's letter but before the actual failure to file Howe's cases, Beach informed Howe that he was being transferred to Dade County because his "ability to perform [his] duties as a trooper [in Lake County] has been impaired beyond redemption." The district court found that this transfer was not a disciplinary action; rather, it was an administrative decision as to how to best use available patrolmen. Because of the friction between Howe and the state attorney's office, Beach concluded that Howe was of limited use in Lake County and transferred him to Dade County where more patrolmen were needed.[1] The letter did not inform Howe that he could appeal this decision.
 
 
 3
 Beach's letter also detailed Howe's problems with the state attorney's office and informed him that because of these problems he was suspended without pay for three days. The letter stated that Howe could appeal the suspension through existing administrative channels. Beach's superior, Davis, approved both the transfer and the suspension.
 
 
 4
 Howe then filed this Sec. 1983 action in N.D. Florida, naming Oldham, Baker, Beach, and Davis as defendants.[2] He alleged that his transfer without a hearing violated procedural due process; that his transfer was based on comments he had made and thus violated his right to free speech; that the suspension and transfer letter, which was placed in his public record, stigmatized him and thereby deprived him of liberty interest without due process; and that Baker and Oldham conspired to deprive him of his procedural rights by trying to get him transferred and by refusing to prosecute any of his cases. Howe sought temporary and permanent injunctive relief prohibiting his transfer and suspension, declaratory judgment, back pay, damages, and attorneys' fees. He also sought to maintain this suit as a class action.
 
 
 5
 This suit was filed three weeks after Howe was supposed to have reported for duty in Dade County. At that time he still had not reported although he continued to draw his regular pay. The district court held a hearing eight days after suit was filed, denied Howe's motion for a preliminary injunction, and ordered him to obey the transfer order. For another seven weeks Howe continued to make daily reports showing that he was in Miami although he had never reported for duty. He then sent a letter to his superiors demanding to stay in Lake County. Beach replied with a letter stating that, because of his failure to report, Howe was considered to have abandoned his job and have resigned from the Career Service.
 
 
 6
 Howe then moved for summary judgment. The district court granted partial summary judgment, ruling that Howe's suspension and transfer deprived him of property without due process of law. It refused to rule as a matter of law that Beach's letter, through its stigmatization of Howe, deprived him of liberty without due process.
 
 
 7
 The defendants then moved for summary judgment asserting that the doctrine of official immunity precluded an award of monetary damages against them. The court granted this motion and proceeded to trial only on the issue of whether Howe was entitled to reinstatement. After a bench trial the court ruled that Howe was not entitled to any relief.
 
 
 8
 Howe then filed a motion to alter or amend the judgment to include the earlier summary judgment that he was denied procedural due process. This motion was granted. The court then denied Howe's motion for attorneys' fees. Howe appealed the district court's final judgment contending that the district court erred in finding official immunity and denying him attorneys' fees. The defendants cross-appealed, asserting that the finding that their procedures violated due process was in error.
 
 DISCUSSION
 I. Official Immunity
 
 9
 Immunizing public officials from damages in a lawsuit brought under Sec. 1983 is based on two distinct, yet related, rationales:
 
 
 10
 (1) the injustice, particularly in the absence of bad faith, of subjecting to liability an officer who is required, by the legal obligations of his position, to exercise discretion; (2) the danger that the threat of such liability would deter his willingness to execute his office with the decisiveness and the judgment required by the public good.
 
 
 11
 Scheuer v. Rhodes, 416 U.S. 232, 240, 94 S.Ct. 1683, 1688, 40 L.Ed.2d 90 (1974). These concerns, weighty though they may be, do not justify granting officials an absolute immunity. Instead, they can be satisfied through application of a qualified immunity. Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), delineates the breadth of this immunity. There the Court held that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 818, 102 S.Ct. at 2738.
 
 
 12
 The Court in Harlow emphasized that the central inquiry was the state of the law at the time the defendants acted. In making this determination a court must take care not to impute its knowledge of the current state of the law back to the official actors. Keeping this in mind, we turn to the defendants in this case.
 
 A. Beach and Davis
 
 13
 The gravamen of Howe's claim against Beach and Davis is that these two defendants deprived him of property without due process of law when they failed to afford him a hearing before his suspension and transfer. In addressing claims based on procedural due process a court must first decide "whether the complaining party has been deprived of a constitutionally protected liberty or property interest." Economic Development Corp. v. Stierheim, 782 F.2d 952, 953-54 (11th Cir.1986); cf. Board of Regents v. Roth, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."). Thus, we must determine whether in 1978 it was clearly established that Howe had a constitutionally protected property interest in not being suspended or transferred.[3]
 
 
 14
 By 1978 it was clear that state law defined protectable property interests. See Roth, 408 U.S. at 577, 92 S.Ct. at 2709. ("Property interests ... are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law....") At the time of Howe's transfer and suspension, state law imposed constraints on the taking of such action. In 1977 Beach, exercising authority granted by Sec. 321.06 Fla.Stat.Ann., had issued General Order No. 43 which stated, "No employee shall be suspended, reduced in pay, transferred, laid off, demoted or dismissed without just cause." Further, Sec. 22A-7.10(6) of the Florida Administrative Code provided, "An agency head may suspend any employee for any of the reasons listed in Section 22A-7.10(7)(b) or for any other just cause...." Thus in 1978 it was clear that state law permitted suspension or transfer only for cause. The mere existence of this protection, however, does not inescapably lead to the conclusion that it was clear that Howe had a constitutionally protected property right in not being transferred or suspended.
 
 
 15
 We do not need to decide whether the protection afforded Howe by Florida law would give rise to a property right since Logan v. Zimmerman Brush, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), in which the Supreme Court held that "[t]he hallmark of property ... is an individual entitlement grounded in state law, which cannot be removed except 'for cause'," id. at 430, 102 S.Ct. at 1155, decided four years after the events in this case took place. Though Logan's roots may be traced back to pre-1978 decisions such as Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 11-12, 98 S.Ct. 1554, 1561-62, 56 L.Ed.2d 30 (1978), Goss v. Lopez, 419 U.S. 565, 573-74, 95 S.Ct. 729, 735-36, 42 L.Ed.2d 725 (1974), and Roth, 408 U.S. at 576-78, 92 S.Ct. at 2708-10, see Logan, 455 U.S. at 430, 102 S.Ct. at 1154 (citing these cases), its holding was not a foregone conclusion in the spring of 1978. In Roth the Court stated that property within the meaning of the Fourteenth Amendment arose from "rules or understandings that secure certain benefits and that support claims of entitlement to those benefits" 408 U.S. at 577, 92 S.Ct. at 2709. The Court did not elaborate on what constituted a protected benefit. Instead, it noted that a promise of continued employment and entitlement to welfare payments were constitutionally protected property. Id.; see also Connell v. Higginbotham, 403 U.S. 207, 208, 91 S.Ct. 1772, 1773, 29 L.Ed.2d 418 (1971) (prohibiting summary dismissal of teacher who had implied promise of continued employment); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (requiring hearing before terminating welfare benefits). No guidance was given as to what other interests would be brought under the Fourteenth Amendment's sweep.
 
 
 16
 In 1976 the Supreme Court recognized this lack of guidance: "It is apparent from our decisions that there exists a variety of interests which are difficult of definition but are nevertheless comprehended within the meaning of either 'liberty' or 'property'...." Paul v. Davis, 424 U.S. 693, 710, 96 S.Ct. 1155, 1165, 47 L.Ed.2d 405 (1976). The Court, however, did not formulate a rule that brought immediate certainty to this area of the law. Further, no decision between Paul and Howe's transfer and suspension sufficiently clarified the law so that a reasonable person would conclude that the just cause limitations granted Howe a property interest under state law.
 
 
 17
 This is not to say that the Court did not address this area of the law between 1976 and 1978. It did. In Bishop v. Wood, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), it again held that continued employment, if guaranteed, is a property right. In Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978), decided contemporaneously with the actions in this case, the Court held that state law restrictions on a utility company's ability to discontinue service gave consumers a property right in continued service. No decision of either the Supreme Court or this court, however, addressed the effect of "cause" limitations on a state's ability to transfer or temporarily suspend one of its employees.
 
 
 18
 Thus when Beach and Davis took the actions challenged here the following propositions were clearly established. State law protection of certain benefits gave rise to a property right in these benefits. These benefits included the right of continued employment, Roth, the right of continued utility service, Memphis Light, the right to use public roads, Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), the right of parolees to remain at liberty provided that the conditions of their parole were satisfied, Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) and the right to a public education, Goss, 419 U.S. at 575-76, 95 S.Ct. at 736-37.
 
 
 19
 These decisions did not clearly establish that the right to be transferred or suspended only with cause was also property. The benefits then included in the Fourteenth Amendment are of a different quality than those possessed by Howe; all are essential to functioning in today's society.
 
 
 20
 It would not have been unreasonable for one to assume in 1978, that the benefits protected by the due process clause of the Fourteenth Amendment were those essential to maintaining a minimum standard of life. Such a belief finds support in the relevant Supreme Court decisions. For example, in Goldberg v. Kelly the Court had said:
 
 
 21
 For qualified recipients, welfare provides the means to obtain essential food, clothing, housing, and medical care. Thus the crucial factor in this context ... is that termination of aid pending resolution of a controversy over eligibility may deprive an eligible recipient of the very means by which to live while he waits. Since he lacks independent resources, his situation becomes immediately desperate. His need to concentrate upon finding the means for daily subsistence, in turn, adversely affects his ability to seek redress from the welfare bureaucracy.
 
 
 22
 397 U.S. at 264, 90 S.Ct. at 1018 (citation, emphasis, and footnotes omitted). In Goss the Court, quoting Brown v. Board of Education, 47 U.S. 483, 493, 74 S.Ct. 686, 691, 98 L.Ed. 873 (1954), reaffirmed that " 'education is perhaps the most important function of state and local governments'...." 419 U.S. at 576, 95 S.Ct. at 737.
 
 
 23
 Although temporary suspensions and transfers interfere with the employment relationship, they do not terminate that relationship. The affected individual is not deprived of means to make a living. To a reasonable person in 1978 it was not clearly established that the right to be transferred or suspended only for cause would be assimilated to other rights falling within the Fourteenth Amendment's meaning of property. Accordingly the district court correctly held that Beach and Davis are immune from monetary damages.
 
 B. Baker and Oldham
 
 24
 Official immunity also protects Baker and Oldham from monetary damages. Howe alleges that Oldham's letter, which was placed in Howe's public record, deprived him of a liberty interest without due process. This letter stated: "Because of prior problems with [Howe's] credibility as a witness, I feel I cannot conscientiously, within my power and oath as a prosecutor, file this case." Howe seeks to hold Baker liable for the role he played in the events that precipitated the letter.
 
 
 25
 In 1978 the seminal case on determining whether public statements deprived the object of those statements of a liberty interest was Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), where the Supreme Court rejected the proposition that a stigmatizing statement standing alone can support a claim based on procedural due process. The Court held that in order to be actionable, the stigmatizing statement had to deprive the person of a right held under state law. Id. at 708, 96 S.Ct. at 1164. This definition of a liberty interest has come to be known as the "stigma-plus" test.
 
 
 26
 None of the "plusses" identified by Howe had been clearly established as protected under Florida law in 1978.[4] Neither the Florida courts nor this court nor the Supreme Court had addressed the interaction of the Florida law and the Paul test. Only in 1980 when this court decided Marrero v. City of Hialeah, 625 F.2d 499 (5th Cir.1980), did any substantial degree of certainty obtain in this area. As Howe admits on appeal, Marrero "interpreted the invaded interest which would constitute the 'plus.' " Appellant's Brief at 16. It is obvious from a reading of the opinion in Marrero that it is an interpretation, not a reiteration. Appellant's Brief at 16. That Marrero relied on Paul does not imply that Paul clearly established the law in this area. Paul set forth a general test. The test still had to be interpreted and applied in any given situation. From reading Paul a reasonable person could conclude that the result in Marrero was not a foregone conclusion. Baker and Oldham cannot be held liable for damages.
 
 II. Denial of Attorneys' Fees
 
 27
 To be entitled to attorneys' fees under 42 U.S.C. Sec. 1988 a plaintiff must be a "prevailing party." Miami Herald Publishing Co. v. City of Hallandale, 742 F.2d 590, 591 (11th Cir.1984). A district court's determination on the award of attorneys' fees will be upheld unless it was an abuse of discretion. Wilson v. Attaway, 757 F.2d 1227, 1248 (11th Cir.1985). Here the district court identified the correct standard for determining whether a plaintiff is a prevailing party and held that he was not. Howe's contention that the district court abused its discretion in so finding lacks merit.
 
 III. Cross-Appeal
 
 28
 Beach and Davis have appealed the district court's finding that Howe's suspension and transfer violated due process. Howe died after this suit was filed. Thus, the equitable remedy of reinstatement is no longer at issue. Because of our ruling on the official immunity issue, Howe's estate would not be entitled to any relief if we were to uphold the district court's holding that Howe's suspension and transfer violated procedural due process. A court "[has] no power to issue advisory opinions ... federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them." North Carolina v. Rice, 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971). Accordingly, the district court's partial summary judgment is vacated as moot.
 
 
 29
 AFFIRMED in part and VACATED in part.
 
 
 
 *
 Honorable Seybourn H. Lynne, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation
 
 
 [1]
 This finding has not been challenged on appeal
 
 
 [2]
 Howe's complaint also named Florida as a defendant. The state is no longer a party
 
 
 [3]
 The Supreme Court's decision in Davis v. Scherer, 468 U.S. 183, 191-93, 104 S.Ct. 3012, 3018-19, 82 L.Ed.2d 139 (1984), does not resolve this issue. There the plaintiff had been fired after repeated warnings that he had to quit his second job. Because he had been given adequate notice of the charges against him and an opportunity to respond to those charges, the Court found that Scherer had received all the process he was due under the case law in 1977. This case differs in two respects. First, Howe was temporarily suspended and transferred; he was not fired. Second, he was not given an opportunity to respond to the charges against him prior to the decision to suspend and transfer. These distinctions are sufficient to take this case out of the ambit of Davis and require us to undertake a de novo examination of the state of the law in 1978
 
 
 [4]
 The four plusses identified by Howe are "denial of opportunity to have charges considered," "interference in interest in employment," "contemporaneous suspension and transfer," and "First Amendment violation." Appellant's Brief at 16-18. Although it may be argued that in 1978 it was clearly established that a First Amendment violation would constitute a "plus," Howe did not present any evidence in the district court substantiating his assertion that Baker and Oldham's actions were taken in response to his exercise of his right of free speech