United States Court of Appeals,

Eleventh Circuit.

No. 95-8242.

Dan R. NOLEN, Jr., et al., Plaintiffs-Appellees.

v.

Maynard JACKSON, Mayor, Eldrin Bell, John Dotson, Joan Garner, Joycelyn Fleming, C.T. Padgett, Lt., Rosalind F. Richardson, John Doe's Numbers 1-10, all of the above in both their individual and official capacities, and City of Atlanta, William Campbell and Beverly Harvard, in their official capacities, Defendants-Appellants.

Jan. 6, 1997.

Appeal from the United States District Court for the Northern District of Georgia. (No. 1:92-CV-2691-GET), G. Ernest Tidwell, Chief Judge.

Before BIRCH, BLACK and CARNES, Circuit Judges.

BLACK, Circuit Judge:

Appellants Mayor Maynard Jackson, Eldrin Bell, Lt. C.T. Padgett, and Rosalind Richardson, as well as the City of Atlanta challenge the denial of their motion to dismiss or alternatively motion for judgment as a matter of law. This motion was based in part on the individual Appellants' assertion of qualified immunity. For jurisdictional reasons we review only the question of qualified immunity and hold that qualified immunity should have been granted.

I. BACKGROUND

Appellees include two Atlanta musical entertainment clubs and their owners, who applied for new liquor licenses in the name of a new licensee. They were notified sometime around December 31, 1990, that the application would be denied because they had failed to attach the proper exhibits. Before they were able to remedy the deficiencies in their application, the tragic drowning death of an

intoxicated, underage college student occurred on January 11, 1991. Appellees allege that during the Atlanta Police Department's investigation of this drowning, both before and after the licenses were formally denied, individual Appellants made statements to the press explicitly or impliedly linking the death to their clubs. [1] Appellees maintain that shortly after the drowning, Chief Eldrin Bell appeared before the Licensing Review Board (the Board) for the purpose of entreating members to close down bars which served alcohol to minors.

About one year later, on January 22, 1992, Appellees were provided a hearing before the Board to review the proposed denial of the licenses. [2] At this hearing, the City of Atlanta presented evidence that Appellees and their employees had been cited for various statutory violations. [3] The Board permitted Appellees to present witnesses and evidence as to why their licenses should have been granted. Nevertheless, in March of 1992, the Board recommended that the Mayor deny the applications, and in April 1992, Mayor Jackson followed that recommendation.

---

[1] Appellees identify four stigmatizing statements: (1) Police Chief Bell's statements before the Board in mid-January 1991; (2) City Attorney Hicks' statements at the hearing itself on January 22, 1992; (3) Investigator Richardson's statements to the press one month after the hearing, sometime in March of 1992; and (4) Police Chief Bell's statements to a reporter on June 16, 1992. We make no judgment as to which, if any, of these statements might be relevant to a constitutional claim. We simply take the factual allegations as true and construe them in the light most favorable to Appellees, the nonmoving party.

[2] Appellees continued to operate their businesses during this time pursuant to a court order.

[3] These violations allegedly include the sale of alcohol to minors.

Appellees subsequently filed this 42 U.S.C. § 1983 action alleging that the City of Atlanta and individual officials acted under color of state law to deny them a constitutionally protected right. The essence of their original complaint was the claim that a government entity had deprived them of their liberty and/or property interests in the liquor licenses without due process of law (or at least, with insufficient or defective procedural due process in the form of the Board hearing), while simultaneously stigmatizing them by making defamatory statements to the press.[4] Individual Appellants moved for summary judgment on the basis of qualified immunity, and the district court dismissed their motion as a discovery sanction.

At the pretrial conference, Appellees abandoned the argument that the hearing was constitutionally insufficient.[5] In response to the changes in the case as originally plead, Appellants filed a motion to dismiss or alternatively motion for judgment as a matter of law in which they again asserted that the individual Appellants are entitled to qualified immunity. They now appeal the denial of that motion.

---

[4]For the purpose of this discussion we assume, without deciding, that Appellees possessed some sort of liberty or property interest in the liquor licences.

[5]The pretrial conference was not recorded, but the parties agree on the substance of what transpired. The court's order reflects this change in the pleadings; the court dismissed Appellees' claim that the Board hearing had been unfair and specifically noted that "the court ruled orally that plaintiffs cannot raise issues at trial which plaintiffs agreed to dismiss at the pretrial conference." As stated in the appellate brief, "Appellees are merely choosing not to litigate the unlawfulness of the revocation." When asked at oral argument, Appellees again conceded that they no longer intend to argue that the licenses were illegally denied.

## II. JURISDICTION

This Court has jurisdiction to review the denial of qualified immunity as an appealable final decision under *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985).[6] Appellants raise other issues and urge us to reach the merits of other claims logically related to the qualified immunity issue. However, we have no jurisdiction to reach the issues raised by the City of Atlanta because *Swint v. Chambers,* --- U.S. ----, ----, 115 S.Ct. 1203, 1206, 131 L.Ed.2d 60 (1995), held that we have no pendent party appellate jurisdiction. *See also Pickens v. Hollowell,* 59 F.3d 1203, 1207 (11th Cir.1995). Furthermore, the existence of pendent issue appellate jurisdiction is uncertain in the wake of *Swint.* To the extent this Court has the discretion to exercise such jurisdiction, we decline to do so. *See Swint,* --- U.S. at ----, 115 S.Ct. at 1212; *Pickens,* 59 F.3d at 1207.[7] As a result, we consider only the qualified immunity issue and dismiss the appeal with respect to all other parties and issues.

## III. STANDARD OF REVIEW

We review questions of law, such as a motion to dismiss or a motion for judgment as a matter of law, *de novo.* *Isenbergh v. Knight-Ridder Newspaper Sales, Inc.,* 97 F.3d 436, 439 (11th

---

[6]We reject without discussion Appellees' argument that the motion to dismiss or alternatively motion for judgment as a matter of law was not timely.

[7]Appellants assert that we have jurisdiction based on the district court's certification of its order for appeal under 28 U.S.C. § 1292(b). However, Appellants' failure to file the application for leave to appeal within ten days of the certification order resulted in denial of that application. Fed. R.App. P. 5(a).

Cir.1996) (motion for judgment as a matter of law); *Fortner v. Thomas,* 983 F.2d 1024, 1028 (11th Cir.1993) (motion to dismiss). In considering a defendant's motion to dismiss or for judgment as a matter of law based on qualified immunity, the district court must examine the complaint to determine "whether, under the most favorable version of the facts alleged, defendant's actions violate clearly established law." *Bennett v. Parker,* 898 F.2d 1530, 1535 n. 2 (11th Cir.1990) (Tjoflat, C.J., concurring), *cert. denied,* 498 U.S. 1103, 111 S.Ct. 1003, 112 L.Ed.2d 1085 (1991).

## IV. DISCUSSION

The issue of whether qualified immunity should be granted in this case turns on the question of whether Appellees' case, as ultimately plead, was sufficient to strip the individual Appellants of qualified immunity. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). This Circuit has set out the two circumstances under which a defendant may be entitled to qualified immunity, the first of which applies to this case:

> [T]he defendant is entitled to dismissal when the plaintiff has failed to allege a violation of a clearly established right.... In this first instance, it is the plaintiff's allegations that determine whether the defendant is entitled to immunity because (as with all motions for judgment on the complaint or pleadings) the plaintiff's factual allegations are taken as true.

*Andreu v. Sapp,* 919 F.2d 637, 639 (11th Cir.1990); *see also*

*Siegert v. Gilley,* 500 U.S. 226, 231, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991) (holding threshold question in a qualified immunity claim is whether a violation of a clearly established constitutional right has occurred); *Lassiter v. Alabama A & M Univ., Bd. of Trustees,* 28 F.3d 1146, 1149-51 (11th Cir.1994) (en banc) (summarizing Eleventh Circuit law on qualified immunity).

Accordingly, we first examine Appellees' allegations to determine whether, if true, they would constitute a violation of clearly established law. The original complaint alleged that the City of Atlanta and its employees "deprived these Plaintiffs of their constitutionally protected liberty interest by denying their applications for liquor licenses while stigmatizing the Plaintiffs." Appellees also alleged procedural deficiencies in the License Review Board hearing.

Appellees have now abandoned the claim that the hearing was procedurally inadequate or defective. Thus, the relevant question is whether, in 1992, the law was clearly established, such that a reasonable city official would have known, that an official violated a constitutionally protected liberty or property interest when he lawfully denied an application for a liquor license, when he provided the applicant with adequate procedural due process, and when he simultaneously made or adopted allegedly defamatory statements about the applicant.

In support of their position that such a cause of action was clearly established, Appellees cite case law involving the so-called "stigma plus" doctrine. This doctrine provides a due process remedy where a plaintiff has been deprived of a liberty or

property interest *without due process of law* and where related defamatory statements were made. None of the cases they cite recognizes a cause of action for a deprivation and accompanying defamatory stigma in which a constitutionally adequate review procedure was provided. *See Paul v. Davis,* 424 U.S. 693, 708-09, 96 S.Ct. 1155, 1164, 47 L.Ed.2d 405 (1976) (holding that a man publicly accused of shoplifting suffered no constitutional deprivation when he was warned but not fired from his job because "it was the alteration of legal status which, combined with the injury resulting from the defamation, justified the invocation of procedural safeguards"); *Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971) (holding unconstitutional a statute allowing the posting of lists of people to whom merchants could not sell alcohol because "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential"); *Lassiter v. Alabama A & M Univ., Bd. of Trustees,* 28 F.3d 1146, 1149-52 (11th Cir.1994) (en banc) (holding that the law was not clearly established that a plaintiff had a property interest in his particular job at the time he was fired without a hearing); *Von Stein v. Brescher,* 904 F.2d 572, 580-81, 584 (11th Cir.1990) (holding that where a police officer effected an arguably lawful arrest for which there was arguable probable cause and although the officer made defamatory statements to the media at the time of the arrest, the plaintiff did not make out a federal cause of action because the officer's statements did not extinguish or significantly alter any right

guaranteed to the plaintiff); *Howe v. Baker,* 796 F.2d 1355, 1358-59 (11th Cir.1986) (holding that there was no violation of clearly established law when the city failed to afford a police officer a hearing prior to his suspension and transfer because the employment was not terminated and plaintiff's legal status did not change); *Clemons v. Dougherty County,* 684 F.2d 1365, 1370-71 (11th Cir.1982) (explaining that the "stigma plus" cause of action requires that a plaintiff plead three elements: deprivation of some previously recognized right or change in legal status, stigmatization, and the denial of due process); *Dennis v. S & S Consol. Rural High Sch. Dist.,* 577 F.2d 338, 344 (5th Cir.1978) (holding that the remedy for this type of constitutional violation is to provide a hearing in which the plaintiff has an opportunity to clear his name).

## V. CONCLUSION

We have not discovered, nor have Appellees presented, any support for the position that a reasonable public official should have been aware that the conduct alleged in this case constituted a violation of clearly established law. Accordingly, we reverse the district court's denial of Appellants' motion to dismiss on grounds of qualified immunity and dismiss this appeal as to all other parties and issues.

REVERSED and REMANDED.