**Esther Julia GOMEZ–GOMEZ, Petitioner,**

v.

**IMMIGRATION AND NATURALIZA-TION SERVICE, Respondent.**

**No. 81–5657**
**Non-Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

Aug. 2, 1982.

Rehearing Denied Oct. 25, 1982.

Benedict P. Kuehne, Bierman, Sonnett, Beiley & Shohat, Teofilo Chapa, Miami, Fla., for petitioner.

Stephen M. Weglian, Lauri Steven Filppu, Crim. Div., U. S. Dept. of Justice, Washington, D. C., for respondent.

Before RONEY, KRAVITCH, and CLARK, Circuit Judges.

CLARK, Circuit Judge:

Petitioner, Esther Julia Gomez-Gomez, seeks review of a decision by the Board of Immigration Appeals (BIA) denying her motion to reopen deportation proceedings. Having concluded that this case is controlled by *INS v. Wang*, 450 U.S. 139, 101 S.Ct. 1027, 67 L.Ed.2d 123 (1981) (per curiam), we affirm.

The pertinent facts are undisputed. Petitioner is a citizen of Colombia. In 1971, petitioner's husband, Rodolfo Gomez-Ayala, also a citizen of Colombia, entered the United States as a crewman on board a commercial sailing vessel. Rodolfo Gomez-Ayala apparently "jumped ship," and has remained illegally in the United States since 1971. Petitioner entered the United States at Miami, Florida, with her two young daughters on August 12, 1973, as a nonimmigrant visitor for pleasure authorized to remain in the United States for one month. On September 4, 1973, she applied unsuccessfully for an extension of stay, and was given until October 15, 1973, to depart the United States. Petitioner did not depart, however, and was contacted by an INS investigator on July 8, 1974. She informed the investigator that she was residing with friends and had failed to depart because her two daughters were attending elementary school in Miami.

On July 9, 1974, petitioner was granted the privilege of voluntary departure by July 29, 1974, but she again failed to depart. Petitioner was not contacted again by an INS investigator until 1978, at which time she reported that she had given birth to a son in Miami on May 31, 1977, and that she and her children were now residing with her husband. On May 22, 1978, the INS initiated deportation proceedings against the petitioner on the ground that she was an alien who entered the United States as a nonimmigrant visitor for pleasure and remained for a longer time than authorized. Following a deportation hearing on June 1, 1978, the immigration judge found petitioner deportable as charged and granted her the privilege of voluntary departure in lieu of deportation. The immigration judge's decision was affirmed by the BIA on May 21, 1980, and petitioner was granted the privilege of voluntary departure within 30 days.

Petitioner again failed to depart and a Warrant of Deportation was issued on June 22, 1980. Subsequently, petitioner was directed to report for deportation on February 18, 1981. Two days before she was to report for deportation, petitioner filed a motion with the BIA to reopen the deportation proceeding for an application for suspension of deportation pursuant to section 244(a)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1254(a)(1). Petitioner alleged that she had been continuously present in the United States for more than seven years, that she had been a person of good moral character since her entry into the United States, and that she and her son, an American citizen, would suffer "extreme hardship" if she were deported. On March 26, 1981, the BIA denied petitioner's motion, finding that she had failed to establish a prima facie case of "extreme hardship" warranting suspension of deportation.

On June 5, 1981, petitioner filed another motion to reopen the deportation proceedings to permit the filing of an application for suspension of deportation. This motion was accompanied by psychiatric and psychological evaluations, heretofore not considered by the BIA, which indicated that petitioner and her family might suffer significant emotional problems if forced to return to Colombia. Petitioner requested reconsideration of her case in light of this newly available evidence. The BIA again denied the motion to reopen, concluding that the additional evidence in conjunction with the previously existing record failed to establish a prima facie case of "extreme hardship" necessary to warrant a reopening of the deportation proceedings. Petitioner then sought review of the BIA decision by this court.

■ Our scope of review in cases such as this is narrow. We can reverse the decision

of the BIA only where the decision amounts to an abuse of discretion. *Aguilar v. INS*, 638 F.2d 717, 719 (5th Cir. 1981). "Section 244 of the Immigration and Nationality Act, ... 8 U.S.C. § 1254(a)(1) (Act), provides that the Attorney General in his discretion may suspend deportation and adjust the status of an otherwise deportable alien who (1) has been physically present in the United States for not less than seven years; (2) is a person of good moral character; and (3) is 'a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.' " *INS v. Wang*, 450 U.S. at 139–40, 101 S.Ct. at 1028–29.

In this case, there is no dispute that petitioner has been physically present in the United States for more than seven years and is a person of good moral character. The BIA's sole ground for refusing to reopen the deportation proceedings is that deportation of petitioner would not result in "extreme hardship." Our task is not to determine whether the BIA correctly interpreted the words "extreme hardship"; as the Supreme Court declared in *INS v. Wang, supra*, "the Act commits their definition in the first instance to the Attorney General and his delegates, and their construction and application of this standard should not be overturned by a reviewing court simply because it may prefer another interpretation of the statute." 450 U.S. at 144, 101 S.Ct. at 1031. The Court made clear that the "Attorney General and his delegates have the authority to construe 'extreme hardship' narrowly should they deem it wise to do so." *Id.* at 145, 101 S.Ct. at 1031.

Our review is limited to determining whether the BIA abused its discretion. We find nothing in the record to suggest such abuse. The BIA considered petitioner's newly offered evidence in conjunction with the entire record file in her case, and con-

cluded that petitioner had failed to establish a prima facie case of "extreme hardship." Petitioner has failed to show that this decision was reached in an arbitrary or irrational manner, and we hold that the BIA did not abuse its discretion in denying petitioner's motion to reopen.

We conclude that this case is controlled by *INS v. Wang*. Petitioner has attempted to distinguish *Wang*, contending that her case is more similar to *Santana-Figueroa v. INS*, 644 F.2d 1354 (9th Cir. 1981), which was decided after *Wang*. We are unable to agree. In *Santana-Figueroa*, the Ninth Circuit reversed a BIA decision because the BIA failed to consider all of the circumstances alleged by the alien to constitute "extreme hardship." Such a failure was deemed to be an abuse of discretion. This is not such a case, however. The BIA considered all of petitioner's circumstances and addressed each of her contentions. Thus, *Santana-Figueroa* is not applicable here, and petitioner has otherwise failed to distinguish *Wang*.

For the reasons expressed in this opinion, the decision of the BIA denying petitioner's motion to reopen her deportation proceedings is affirmed.

AFFIRMED.