[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

---

No. 95-8238

---

Agency Nos. A29-295-133 & A29-295-124

IFTIKHAR HUSSAIN SAIYID and
NAZMA SAIYID,

Petitioners,

versus

IMMIGRATION AND NATURALIZATION SERVICE,

Respondent.

---

Appeal from the United States
Board of Immigration Appeals

---

**(January 12, 1998)**

Before HATCHETT, Chief Judge, TJOFLAT, Circuit Judge, and
GODBOLD, Senior Circuit Judge.

TJOFLAT, Circuit Judge

This case is before us on a petition to review a final order of deportation. The petitioners are foreign nationals who have admitted deportability but who seek relief under 8 U.S.C. § 1253(h) (1994) (withholding of deportation), or 8 U.S.C. § 1254 (1994) (suspension of deportation). They raise several issues on appeal, only one of which merits discussion: whether the Board of Immigration Appeals (the "BIA") erred when it applied a prima facie standard in denying petitioners' motion to remand the case to the Immigration Court to permit them to file an application for suspension of deportation. We conclude that the Board did not err, and therefore deny the petition.

The petitioners also move this court under 28 U.S.C. § 2347© (1994) to remand this case to the BIA so that they can present further evidence in support of their previous motion to remand to the Immigration Court. Their motion is denied.

I.

Iftikhar Saiyid and his wife, Nazma, are citizens of Bangladesh, which they left in 1976 to pursue business interests in Dubai, United Arab Emirates. The Saiyids worked and lived in Dubai until 1980. They then moved to Oman, again to pursue business interests, where they resided until 1986. After Mr.

2

Saiyid's business relationships in Oman soured, the Saiyids moved to England, where they stayed a full year before obtaining visas under 8 U.S.C.A. § 1101(a)(15)(B) (1970 & Supp. 1997) (nonimmigrant business visitor visas), and coming to the United States in 1987.

The Saiyids' visas expired on December 30, 1988, but they continued to reside and apparently work in this country. In October of 1989, they decided to claim -- for the first time -- that they were refugees from Bangladesh. They therefore applied for asylum in the United States.[1] On March 1, 1990, the

---

[1]An alien seeking asylum must demonstrate that he or she

> is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of the country of such person's nationality or, in the case of a person having no nationality, the country in which such person habitually resided, because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 C.F.R. § 208.5 (1989) (We cite to the most recent edition of the Code of Federal Regulations unless the cited regulation has changed since it was applied in this case. If the regulation has changed, we cite to the version of the Code in which the regulation as applied in this case appears.).

The Saiyids identify themselves as "non-Bengalis," a term that apparently encompasses all person in Bangladesh who are not identified as "Bengalis," members of an ethnic group concentrated in former East Pakistan. Bangladesh gained its independence from Pakistan in 1972 largely through the efforts of Bengalis. The Saiyids claim that, as non-Bengalis, they have a "well-founded" fear of persecution under § 208.5 because they will be subjected to persecution at the hands of Bengalis in modern-day Bangladesh. The Saiyids base their claim on two incidents occurring more than 20 years ago: in 1972, four years before the Saiyids left Bangladesh, members of the Bengali freedom fighters looted their

3

Immigration and Naturalization Service (the "INS") denied their asylum application because Mr. Saiyid was the subject of an outstanding arrest warrant for embezzlement in Oman and therefore statutorily ineligible for asylum. See 8 C.F.R. § 208.8(f)(1)(v) (1990) ("The [INS] district director shall deny a request for asylum . . . if it is determined that . . . [t]here are serious reasons for considering that the alien has committed a serious non-political crime outside the United States prior to the arrival of the alien in the United States . . . ."). The same day, the INS issued Orders to Show Cause as to why the Saiyids should not be deported. See 8 U.S.C. § 1251(a)(1)(c)(I) (1994) (classifying as deportable those aliens who have overstayed their nonimmigrant visas).

At their deportation hearing in March of 1991, the Saiyids admitted deportability, but again claimed that they were entitled to asylum and/or withholding from deportation under section 243(h) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1253(h) (1994). The Immigration Judge denied their claim, finding that the Saiyids did not possess a "well-founded fear" of

---

house and struck their son; and in 1975, Bangladesh military police detained Mr. Saiyid for several days under the Emergency Powers Act of 1974 to question him as a suspected "Indian agent." The Saiyids also lost property to a program of nationalization conducted by the Bangladeshi government.

persecution.[2]  The Judge did grant the Saiyids voluntary departure, of which they failed to take advantage.

The Saiyids then appealed to the BIA, claiming numerous factual and legal errors.  During the pendency of their appeal, they became eligible to apply for suspension of deportation.  See 8 U.S.C. § 1254(a)(1) (1994) (requiring seven years residence immediately prior to application for suspension eligibility).  The Saiyids therefore filed a motion with the BIA to remand the case to the Immigration Court to permit them to apply for suspension.  The BIA denied the Saiyids' motion because it found that they had failed to make the prima facie case of "extreme hardship" necessary for relief.

The Saiyids now appeal to this court.  They raise a flourish of arguments, challenging every factual and legal determination arrived at in this case thus far.  We address the only issue that holds any merit: whether the BIA was correct to apply a prima

---

[2]To grant an alien withholding from deportation, the BIA must find that the alien's "life or freedom would be threatened in [the country of deportation] on account of race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1253(h)(1) (1994).  The Supreme Court has interpreted the "would be threatened" requirement as a burden on the alien to show a "clear probability" of persecution.  See INS v. Stevic, 467 U.S. 407, 430, 104 S.Ct. 2489, 2501, 81 L.Ed.2d 321 (1984).  The clear probability standard is higher than the "well-founded fear" standard necessary to succeed on an asylum claim.  See INS v. Cardoza-Fonseca, 480 U.S. 421, 430-32, 107 S.Ct. 1207, 1212-13, 94 L.Ed.2d 434 (1987) (explaining differences between the two standards).  A finding that an alien has no well-founded fear of persecution, therefore, precludes the award of both asylum and withholding.

facie standard to the Saiyids' motion to remand.  We hold that the prima facie standard is appropriate and therefore uphold the findings of the BIA.

The Saiyids have also filed a motion with this court to remand to the BIA to permit them to adduce additional evidence regarding their eligibility for suspension from deportation. They claim that the general worsening of their health as they approach old age (Mr. Saiyid is now 70, Mrs. Saiyid is 69), combined with the fact that Mrs. Saiyid has been treated for breast cancer since the BIA rendered its decision, now suffice to show a prima facie case of "extreme hardship" necessary to support their previous motion to remand to the Immigration Court. Because we find that the Saiyids have failed to establish that their case is worthy of remand under 28 U.S.C. § 2347, and because the Saiyids are time-barred from reopening their case before both the BIA and the Immigration Court, we deny the Saiyids' motion.

## II.

## A.

Section 244 of the INA provides that the Attorney General may suspend an alien's deportation if the alien:

    has been physically present in the United States for a

6

continuous period of not less than seven years immediately preceding the date of such application, and proves that during all of such period he was and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

8 U.S.C. § 1254(a)(1) (1994). When the Saiyids first appeared before the Immigration Judge, they had been in this country for only three years and were thus statutorily ineligible for suspension. By the time the BIA considered their claims, however, they had passed the seven-year mark. They therefore moved the BIA to remand their case to the Immigration Court so they could apply for suspension relief.

Applying the prima facie standard of review customarily used for motions to remand/reopen, see INS v. Abudu, 485 U.S. 94, 104-05, 108 S.Ct. 904, 912, 99 L.Ed.2d 90 (1988) (establishing that failure to establish a prima face case is grounds for denial of a motion to reopen),[3] the BIA found that the Saiyids had failed to show they would suffer extreme hardship upon deportation. It therefore affirmed the findings of the Immigration Court and ordered the Saiyids deported.

The Saiyids claim that the BIA erred when it evaluated their

---

[3]There is no statutory procedure for remanding a case to Immigration Court. Courts customarily treat motions to remand as motions to reopen under 8 C.F.R. § 3.2 (1997) (regulating motions for "[r]eopening or reconsideration before the Board of Immigration Appeals").

motion under the prima facie standard.  They point out that a motion to reopen must "state the new facts to be proved at the reopened hearing . . . ."  8 C.F.R. § 3.8(a) (1994).  The Saiyids reason that the courts have not ruled on whether the prima facie standard applies to a motion to remand or reopen that does not contain "new facts."  Because their claim was not based on new factual information, but on a new form of statutory relief, the Saiyids believe that the prima facie standard was not appropriate in their case.  They argue for the application of a new standard of review under which the Board would remand to the Immigration Court for further proceedings if it found that their petition for suspension was "non-frivolous."

There is no support for the Saiyids' position.  Suspension is a form of discretionary relief.  See 8 U.S.C. 1254(a) ("[T]he Attorney General *may, in his discretion*, suspend deportation . . . .") (emphasis added); Jay v. Boyd, 351 U.S. 345, 354, 76 S.Ct. 919, 924-25, 100 L.Ed. 1242 (1956) (stating that the Attorney General's discretion is nearly "unfettered").  A prima facie standard for motions to remand adequately protects the petitioner's ability to apply for suspension, while recognizing that suspension relief is reserved for true "hardship" cases in which humanitarian concerns counsel a departure from normal deportation regulations.

Moreover, a prima facie standard guards against abuse of the

suspension privilege. As the Supreme Court stated in INS v. Rios-Pineda, 471 U.S. 444, 450, 105 S.Ct. 2098, 2102, 85 L.Ed.2d 452 (1985), "[o]ne illegally present in the United States who wishes to remain already has a substantial incentive to prolong litigation in order to delay physical deportation for as long as possible." The standard serves as a screening mechanism, ensuring that claims for suspension of deportation are not simply attempts to buy more time in the United States.

This circuit, and the Supreme Court, have historically applied a prima facie standard in assessing motions to remand to permit application for suspension relief. See Aguilar v. INS, 638 F.2d 717, 719 (5th Cir. Unit B 1981) ("In considering the Motion, the Board's responsibility [is] to determine, on the basis of the moving papers, affidavits, and other supporting evidence, whether petitioners presented a prima facie case of eligibility for suspension of deportation under 8 U.S.C. § 1254 . . . .") (citations omitted);[4] Gomez-Gomez v. INS, 681 F.2d 1347, 1348-49 (11th Cir. 1982) (limiting the court's review of a BIA decision to abuse of discretion when the BIA evaluates a motion to reopen for suspension application under a prima facie standard); INS v. Jong Ha Wang, 450 U.S. 139, 141, 101 S.Ct.

---

[4]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

9

1027, 1029, 67 L.Ed.2d 123 (1981) (stating in a case involving a motion to reopen for suspension proceedings that "motions [to reopen] will not be granted 'when a prima facie case of eligibility for the relief sought has not been established'") (BIA citations omitted). We see no need to question the prima facie standard in this case.

B.

Having failed to move the BIA initially, the Saiyids now petition this court to remand to the BIA to allow them to present further evidence of their eligibility for suspension. We have jurisdiction over this motion under 28 U.S.C. § 2347© (1994), which provides in relevant part:

> If a party to a proceeding to review applies to the court of appeals in which the proceeding is pending for leave to adduce additional evidence and shows to the satisfaction of the court that –
>
> (1) the additional evidence is material; and
> (2) there were reasonable grounds for failure to adduce the evidence before the agency;
>
> the court may order the additional evidence and any counterevidence the opposite party desires to offer to be taken by the agency.[5]

---

[5]Section 306(a)(2) of the recently enacted Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRAIRA"), Pub.L. No. 104-208, 110 Stat. 3009-546, eliminates § 2347 jurisdiction over motions to reopen. See 8 U.S.C.A. § 1252(a)(1) (1970 & Supp. 1997) (prohibiting appeals courts from ordering the "taking of additional evidence under section 2347©

Exercise of jurisdiction under section 2347 is discretionary. See <u>Alsheweikh v. INS</u>, 990 F.2d 1025, 1026-27 (8th Cir. 1993); <u>Rhoa-Zamora v. INS</u>, 971 F.2d 26, 35 (7th Cir. 1992).

The Saiyids have convinced us neither that reasonable grounds exist for their failure to present the evidence supporting their motion to the BIA, nor that much of their evidence is material. In addition, granting the Saiyids' motion would allow them to circumvent new federal regulations prohibiting multiple motions to reopen before the BIA. Their motion is therefore denied.

The Saiyids base their motion to remand on evidence of Mrs. Saiyid's recent battle with breast cancer, and on evidence of Mr. Saiyid's generally deteriorating health as he approaches old age. Though we may sympathize with the Saiyids, they have not shown to this court's satisfaction that a remand is warranted.

We note that Mrs. Saiyid was first diagnosed with cancer in February of 1995, only two months after the BIA issued a final order of deportation in the Saiyids' case and several months before they argued their case before this court. Nothing

_____

of Title 28"). This prohibition does not apply here because the BIA's final order of deportation in the Saiyids' case was entered on December 9, 1994 -- before the effective date of the amended section. <u>See</u> *Effective Date of 1996 Amendments*, Historical & Statutory Notes to 8 U.S.C.A. § 1252(a)(1), at 8 (Supp. 1997), and *Effective Date of 1996 Amendments*, Historical & Statutory Notes to 8 U.S.C.A. § 1101, at 25 (Supp. 1997) (establishing an effective date of April 1, 1997).

11

prevented the Saiyids from filing a second motion to remand with the BIA at that time, or at any time thereafter until at least April 29, 1996.[6]  We find, therefore, that no reasonable grounds exist for the Saiyids' failure to adduce the evidence of cancer before the BIA.  See Paul v. INS, 521 F.2d 194, 201 (5th Cir. 1975) (considering failure to file with BIA as factor in denying remand).

The evidence regarding the Saiyids' advancing age and Mr. Saiyid's accompanying ailments likewise fails to pass muster under section 2347(c)(2) because it, too, could have been presented to the BIA.  Moreover, the age evidence is largely cumulative of the evidence the Saiyids presented to the BIA in their first motion to remand.  The Saiyids therefore fail to satisfy this court that the age evidence is material, as required by section 2347(c)(1).

In addition, extra-statutory factors counsel a denial of the Saiyids' motion.  The Saiyids were ten years younger when they first decided to evade this country's immigration laws and

---

[6]As we discuss *infra*, the federal regulations now prohibit a petitioner from filing multiple motions to reopen a deportation proceeding.  See 8 C.F.R. § 3.2(c)(2) (1997).  Neither the BIA nor any court of appeals has decided whether regulation 3.2, as amended, prohibits second motions to reopen only when the first motion was filed after the regulation's effective date of April 29, 1996, see 61 Fed.Reg. 18,900, 18,904 (April 29, 1996) (codified at 8 C.F.R. § 3.2(c)(2) (1997)), or whether it prevents all second motions as of that date.  We need not decide that issue here.

overstay their visitors' visas. They prolonged their stay by filing a highly dubious application for asylum.[7] When denied asylum, they filed a second, equally dubious claim to avoid imminent deportation. When denied again and granted voluntary departure by the Immigration Judge, they still did not leave, but

---

[7]As mentioned *supra*, the Saiyids were statutorily ineligible for asylum because Mr. Saiyid was the subject of an outstanding arrest warrant for embezzlement in Oman, of which he may have been aware before filing his application.

Moreover, under INS regulations in effect at the time the Saiyids filed their asylum claim, an alien was statutorily ineligible for asylum if he had been "firmly resettled" in a country other than his homeland before coming to the United States. See 8 C.F.R. § 207.1(b) (1997) ("Any applicant who has become firmly resettled in a foreign country is not eligible for refugee status under this chapter."). The Saiyids had spent several years as the guests of no fewer than three other nations before coming to the United States. This fact alone probably rendered them ineligible for asylum. See Farbakhsh v. INS, 20 F.3d 877, 882 (8th Cir. 1994) (upholding BIA's finding of firm resettlement and denial of asylum under the same regulation when petitioner had passed through several countries en route to the United States).

And when the INS questioned Mr. Saiyid during his deportation proceedings about his desire to seek asylum in the United States, his answers were less than reassuring:

Q. When you went to the embassy to apply for this business visa, did you ask them if you could come to the United States as a refugee?
A. No.
Q. Why didn't you do that?
A. Well, at that time, I was really not . . . not sure. I . . . I came here to actually explore the possibilities of certain projects' financing. But when it took time and it went on and on and I had to live, I found that I was living very peacefully here and I . . . it occurred to me that I should apply for . . . for an asylum. . . .

Thus, it appears that the Saiyids' original asylum claim was most likely frivolous and simply a delay tactic.

13

instituted a series of meritless appeals, culminating in the case before us.  In other words, the Saiyids have grown old by manipulating our immigration system.  We decline to remand based on the Saiyids' evidence of age and accompanying ailments that arose from "the passage of time while their meritless appeals dragged on."  INS v. Rios-Pineda, 471 U.S. 444, 450-51, 105 S.Ct. 2098, 2102-03, 85 L.Ed.2d 452 (1985) (holding that the BIA may discount evidence of seven years' presence in its assessment of eligibility for suspension when presence was maintained through meritless appeals) (BIA citations omitted).  A contrary finding would encourage abuse of our immigration system.

Finally, the Saiyids appear to be attempting to circumvent new immigration regulations by filing their motion to remand with this court rather than with the BIA.  Section 3.2 of Title 8 of the Code of Federal Regulations, as amended under IIRAIRA, provides that:

> a party may file only one motion [before the BIA] to reopen deportation or exclusion proceedings (whether before the Board or the Immigration Judge) and that motion must be filed no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened, or on or before September 30, 1996, whichever is later.

8 C.F.R. § 3.2(c)(1997).  The BIA's final decision was entered on December 9, 1994; thus, the final date the Saiyids could have filed a motion with the BIA to reopen proceedings in the

14

Immigration Court was September 30, 1996.[8]  Even if we were to remand under section 2347, therefore, the Saiyids would be prevented from moving the BIA to reopen Immigration Court proceedings to allow them to file an application for suspension.[9] Our remand would serve only to allow the Saiyids to prolong their illegal stay in the United States.

We note that if the Saiyids could have filed this second motion to remand with the BIA, and simply chose the wrong forum,

---

[8]As mentioned *supra* note 6, the Saiyids could have been barred from filing their motion as early as April 29, 1997.

[9]We have suggested in the past that when a petitioner's motion for remand is based on evidence so strong that (on remand) the BIA's refusal to reopen on such evidence would be a clear abuse of discretion, we may direct the BIA to reopen the proceedings as part of a grant of the petitioner's motion to remand.  See Vargas-Gonzalez v. INS, 647 F.2d 457, 459 (5th Cir. Unit A 1981); Coriolan v. INS, 559 F.2d 993, 1004 (5th Cir. 1977).  Putting aside the fact that ordering the BIA to reopen this case would thwart the intent of Congress and the INS in amending regulation 3.2, we point out that the proper fact-finder concerning eligibility for suspension from deportation is the BIA, not this court.  See, e.g., Elboukili v. INS, No. 97-9529, order & judgment at 6 (10th Cir. Oct. 7, 1997) (unpublished opinion) ("Even when a petitioner satisfies the standards of § 2347(c), we will not order the BIA to grant a petitioner's motion to reopen; that decision is left to the BIA's discretion."); Tayo v. INS, No. 95-9517, order & judgment at 5 (10th Cir. Feb. 23, 1996) (unpublished opinion) (emphasizing that motions to remand "must not allow courts to encroach on decisions properly left to the sound discretion of the INS").  Thus, evaluation of the merits of the underlying motion to reopen in a motion to remand should only be conducted in the rarest of cases, when a refusal to remand would only "launch [the] case on a lengthy procedural voyage," Coriolan, 559 F.2d at 1004, to reach an inevitable reopening.  This is not such a case.  To obtain a reopening, therefore, the Saiyids would have to file with the BIA; such filing is now prevented by regulation 3.2.

15

that factor would weigh in favor of granting remand.  The Saiyids, however, filed their motion to remand with this court on October 7, 1996.  As explained *supra*, if this motion had been filed with the BIA, it would have been untimely under the amended regulations and therefore statutorily barred.  See In re J-J-, BIA Interim Decision 3323 (July 31, 1997) (finding motion to reopen filed on October 2, 1996, untimely when final administrative decision sought to be reopened was rendered August 8, 1995).  The Saiyids' motion thus appears to be an attempt to circumvent federal regulations.

III.

For the above reasons, the petition for review is DENIED.

The appellants' motion to remand is DENIED.

SO ORDERED.

16