[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 98-4426

_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
1/04/99
THOMAS K. KAHN
CLERK

D. C. Docket No. 97-CV-3108-JAL

ERNESTO ALONSO MEJIA RODRIGUEZ,

Petitioner-Appellant,

versus

JANET RENO, as Attorney General of the United States,
and the IMMIGRATION AND NATURALIZATION SERVICE,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(January 4, 1999)**

Before CARNES and HULL, Circuit Judges, and HENDERSON, Senior Circuit
Judge.

HULL, Circuit Judge:

Appellant Ernesto Alonso Mejia Rodriguez ("Mejia") appeals the district court's dismissal of his § 2241 petition for a writ of habeas corpus, filed in 1998, challenging his final deportation order entered in 1994. After review, we affirm.

## I. Facts and Procedural History

Mejia is a native of Honduras who lawfully entered the United States as a nonimmigrant visitor on November 17, 1980.

### A. Mejia's Criminal Offense

On April 14, 1986, Mejia was charged in Florida state court with possession of cocaine, trafficking in cocaine, and conspiracy. On July 24, 1986, Mejia pled no contest to the cocaine-trafficking charge. As part of a plea agreement, the court withheld a final adjudication of guilt and sentenced Mejia to a one-year term of youth-offender incarceration and two years to be served in a "Community Control Program."

Mejia introduced evidence in the district court which established that he entered his no-contest plea in reliance on certain representations.[1] Specifically, both the trial court and Mejia's counsel advised him that his no-contest plea would not yield any adverse immigration consequences. In addition, Mejia was advised

_____

[1] Mejia established the terms of his plea agreement and his plea colloquy through affidavits from his attorney, the prosecutor, and the sentencing judge.

that his criminal record would be sealed upon completion of his probationary sentence.

Prior to his first deportation hearing, Mejia filed a petition in Florida state court to seal his criminal record. The Florida court denied Mejia's petition. After his first deportation hearing, Mejia filed a motion for reconsideration of the state court's denial of his petition to seal his criminal record. Mejia's motion contended that he entered his no-contest plea in reliance on the court's representation that his criminal record would be sealed and that his plea would not cause any "immigration problems." On December 4, 1990, the state court granted Mejia's petition to seal his criminal records.

## B.    Deportation Proceedings

On March 8, 1990, the INS commenced deportation proceedings against Mejia. The INS issued an Order to Show Cause which asserted two grounds for deportation. First, the INS charged Mejia with deportability under INA § 241(a)(2), 8 U.S.C. § 1251(a)(2) (1990), as an alien who had entered the United States without inspection by an immigration officer, and under INA § 241(a)(11), 8 U.S.C. § 1251(a)(11) (1990), as an alien convicted of a crime involving controlled substances.

On December 6, 1990, the INS amended its show-cause order withdrawing these two grounds for deportation and charging Mejia with deportability under INA § 241(a)(2), 8 U.S.C. § 1251(a)(2)(1990), for overstaying his nonimmigrant visa. The INS alleged that Mejia originally had entered the United States as a nonimmigrant visitor and later changed his status to nonimmigrant student. According to the INS, Mejia's nonimmigrant-student visa expired in August 1990.

After the state court had sealed Mejia's criminal record, the immigration judge found Mejia deportable. On January 24, 1991, the immigration judge entered a deportation order concluding that Mejia had unlawfully remained in the United States beyond the period allowed by his nonimmigrant visa. However, the immigration judge allowed Mejia leave to file for a suspension of deportation. On February 21, 1991, Mejia filed for suspension of deportation under INA § 244, 8 U.S.C. § 1254(a)(2) (1991).[2]

---

[2] At the time of Mejia's initial deportation proceedings, the Attorney General could order the "suspension of deportation" if: (1) deportation was based on certain specified grounds, (2) the alien had been "physically present in the United States for a continuous period of not less than ten years" after becoming deportable, (3) in that time was a person of "good moral character", and (4) in the opinion of the Attorney General, deporting the alien would cause "exceptional and extremely unusual hardship" to the alien or any of the alien's "spouse, parent, or child" who are United States citizens. INA § 244(a)(2), 8 U.S.C. § 1254(a)(2) (1991). At the time of Mejia's deportation proceedings, INA § 101(f) listed a number of factors that precluded an alien from being considered a "person of good moral character", and this list included aliens who are deportable for a conviction involving controlled substances. INA § 101(f), 8 U.S.C. § 1101(f) (1991). The Attorney General possessed the discretion to interpret narrowly the "exceptional and extremely unusual hardship" element of the suspension-of-deportation analysis. Gomez-Gomez v. INS, 681 F.2d 1347, 1349 (11th Cir. 1982). Accordingly, Mejia has not

4

The INS immediately moved to pretermit Mejia's motion for suspension of deportation. The INS argued that Mejia's drug conviction precluded a finding that Mejia had been a person of "good moral character," thus rendering him ineligible for a suspension of deportation.

On August 2, 1991, following a hearing, the immigration judge granted the INS' motion to pretermit Mejia's motion for a suspension of deportation and

---

demonstrated that even without his drug conviction, he would have been found eligible for this extraordinary relief.

IIRIRA replaced suspension of deportation with a new, but similar, procedure called "cancellation of removal." INA § 240A, 8 U.S.C. §1229b (Supp. 1998). A non-permanent resident alien is eligible for a cancellation of removal and the adjustment of status "to an alien lawfully admitted for permanent residence" if the alien:

> (A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application [for cancellation of removal];
> (B) has been a person of good moral character during such period;
> (C) has not been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title; and
> (D) establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

INA § 240A, 8 U.S.C. § 1229b (Supp. 1998). Unlike the old suspension-of-deportation statute, INA § 244, the cancellation-of-removal statute specifically refers to 8 U.S.C. § 1182(a)(2) (Supp. 1998) and thereby precludes by its own terms cancellation of removal for anyone convicted of, among other listed offenses, an offense involving controlled substances. INA § 240A, 8 U.S.C. § 1229b(C) (Supp. 1998). Nevertheless, as was the case prior to IIRIRA, INA § 101(f), 8 U.S.C. § 1101(f) (Supp. 1998), continues to exclude anyone convicted of a crime involving controlled substances from the definition of a "person of good moral character." Therefore, under the INA as amended by IIRIRA, an alien convicted of a controlled-substance offense is ineligible for cancellation of removal by the terms of INA § 240A, 8 U.S.C. § 1229b (Supp. 1998), and because such an alien still can not meet the definition of "a person of good moral character." Moreover, as was the case with suspension of deportation, as to those statutorily eligible, cancellation of removal remains a discretionary act.

5

ordered Mejia deported to Honduras. First, the immigration judge admitted into evidence the records of Mejia's cocaine conviction that had been sealed by the Florida state court. The immigration judge specifically noted that he admitted the records only for the purpose of considering Mejia's application for suspension of deportation and not to establish another ground for deportation. The immigration judge found that these records established a conviction as defined under federal immigration law. Based on his conviction for cocaine trafficking, the immigration judge found that Mejia could not be deemed a person of "good moral character" and therefore could not meet the requirements for suspension of deportation under INA §§ 244(a)(2) & 101(f), 8 U.S.C. § 1254(a)(2) & 1101(f) (1991).

Mejia appealed the immigration judge's August 1991 decision to the BIA, and on January 12, 1994, the BIA affirmed the deportation order entered by the immigration judge. First, the BIA concluded that the immigration judge properly found Mejia deportable for remaining in the United States following the expiration of his student visa. In doing so, the BIA also rejected Mejia's claim that he remained in the United States only to contest his deportation. In addition, the BIA upheld the immigration judge's determination that Mejia had been "convicted" for the purposes of federal immigration law regardless of the fact that the state court had ordered Mejia's records sealed. As a result of this conclusion, the BIA found

6

that Mejia was within a class of aliens who could be deported based on a controlled-substance conviction and therefore concluded that the immigration judge properly found that Mejia was ineligible for a suspension of deportation.

In a letter dated April 12, 1995, the INS informed Mejia that he was scheduled to be deported on May 12, 1995, and ordered him to report to the INS on that date for deportation to Honduras. Mejia did not appear for deportation as ordered. Although Mejia could have sought judicial review of the BIA's January 1994 decision, he did not do so and instead absconded.

## C.    Drug Conviction Vacated

While he remained a fugitive from deportation, on May 21, 1997, Mejia petitioned in Florida state court for a writ coram nobis in which he sought to vacate his drug-trafficking conviction. Mejia contended that he did not receive effective assistance of counsel in his state criminal proceedings because he was not informed of the immigration consequences of his no-contest plea.

On August 1, 1997, the state court vacated Mejia's plea and sentence. Subsequently, the Florida State's Attorney announced a nolle prosequi of the cocaine-trafficking charges against Mejia.

## D.    Mejia's Motion to Reopen his Deportation Proceedings

7

On September 23, 1997, the INS took Mejia into custody to execute the final deportation order entered in January 1994. On September 26, 1997, Mejia filed two motions to reopen his deportation proceedings - one to the immigration judge and one to the BIA. According to Mejia, the immigration judge refused to accept this motion.

In an order dated November 27, 1998, the BIA denied Mejia's motion to reopen his deportation proceedings. The BIA noted that under 8 C.F.R. § 3.2(c)(2) a motion to reopen deportation proceedings must be filed within 90 days of the BIA's decision or before September 30, 1996, whichever is later. As Mejia did not file his motion to reopen until 1997, the BIA concluded that his motion was not timely filed. On December 14, 1998, Mejia filed, in this Court, a petition for review of the BIA's November 1998 order. Mejia-Rodriguez v. INS, No. 98-5878.

E.     Mejia's Petition for a Writ of Habeas Corpus

On September 26, 1997, while his motion to reopen his deportation proceedings was still pending before the BIA, Mejia filed a § 2241 petition for habeas corpus in United States District Court for the Southern District of Florida. 28 U.S.C. § 2241. In this petition, Mejia alleged that the immigration judge's order pretermitting Mejia's application for suspension of deportation was based upon an unconstitutional conviction subsequently vacated by the Florida state

8

courts. Mejia's petition further alleged that this ineffective assistance of counsel in state court unconstitutionally tainted Mejia's federal immigration proceedings because it had the collateral effect of precluding Mejia's application for suspension of deportation, which was provided for under federal law. Finally, Mejia alleged that denying him the right to seek a suspension of deportation based on his unconstitutionally obtained state drug conviction constituted a deprivation of due process. With his petition, Mejia also filed an emergency motion for a stay of deportation.

On September 26, 1997, the district court dismissed Mejia's petition and denied his request for a stay of deportation. The district court found that Mejia's petition was not timely filed under INA § 106(a)(1), 8 U.S.C. § 1105a(a)(1) (1996).

Mejia filed a motion for reconsideration of the court's order and for a stay of his deportation. In his motion, Mejia argued that the district court had erroneously relied on INA § 106(a)(1), a statute that had been repealed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), and that his petition was based on 28 U.S.C. § 2241 - not INA § 106(a)(1). On October 7, 1997, the district court granted Mejia's motion to the extent it sought a stay of his deportation. The court denied Mejia's motion for reconsideration in an order dated November 14, 1997.

**F. Mejia's Renewed Habeas Petition**

On November 21, 1997, Mejia filed a renewed petition for habeas corpus under the same civil action number in the district court. In his new petition, Mejia reiterated the claims that he asserted in his initial petition and again asserted § 2241 as the sole basis for the court's jurisdiction.

On March 12 1998, the district court dismissed Mejia's renewed petition and denied his request for a stay of deportation. The district court found that under 8 C.F.R. § 3.23, a motion for reconsideration of an "administrative order of removal, deportation, or exclusion" must be filed within thirty days of the order or before July 31, 1996, whichever is later, and a motion to reopen deportation proceedings must be filed within ninety days of the final order or before July 31, 1996, whichever is later. The district court further noted that Mejia did not file his motion to reopen until September 26, 1997, and that because the motion was not timely filed, the immigration judge refused to consider his motion. The district court reasoned that essentially Mejia's habeas corpus petition "invited the court" to force the immigration judge to consider an untimely motion to reopen that the judge had refused to consider. The district court concluded that it "must decline that invitation."

On March 12, 1998, Mejia filed a Notice of Appeal of the district court's decision and, on March 13, 1998, moved for an emergency stay of his deportation. On the same day, Judge Tjoflat temporarily stayed Mejia's deportation, and on March 26, 1998, Judge Tjoflat ordered that "[t]he stay of [Mejia's] deportation shall continue pending resolution of Richardson v. Reno, No. 98-04230."

## II.    Standard of Review

The availability of habeas relief under § 2241 presents questions of law which we review de novo.  Nolen v. Jackson, 102 F.3d 1187, 1190 (11th Cir. 1997)

## III.    Discussion

### A.    Mejia's Contentions

Mejia's petitions for habeas relief focus on the collateral effect of his unconstitutional drug conviction on his immigration status.  According to Mejia, the Florida courts have deemed his conviction "unconstitutional" because it was obtained in violation of his Sixth Amendment right to the effective assistance of counsel.  Mejia contends that, although the conviction has been vacated, the conviction continues to cause adverse consequences to his immigration status.  It is important to note, however, that Mejia is currently facing deportation for overstaying his student visa - not for his drug conviction.  Therefore, Mejia's contentions necessarily focus on only his argument that, except for the cocaine

11

conviction, he would have been eligible for a suspension of deportation.

According to Mejia, his unconstitutional conviction continues to prevent him from

being considered for a suspension of deportation.  Through his petition for habeas

relief, Mejia seeks judicial review to remedy this alleged collateral effect of a

constitutional violation, which he contends constitutes a deprivation of due

process.[3]

As noted above, the district court dismissed Mejia's petition noting that

Mejia was attempting to reopen his final 1994 deportation order through habeas.

The district court observed that a motion to reopen deportation proceedings must

be filed within certain time periods and that the immigration judge had refused to

consider Mejia's motion to reopen because it was  not timely filed.  Accordingly,

the district court refused to order the immigration judge to consider an untimely

motion.

Similarly, on November 27, 1998, the BIA also denied Mejia's motion to

reopen concluding that Mejia had not sought to reopen, in a timely fashion, his

deportation proceedings, which became final in 1994.  The common theme of these

decisions is, in effect, that immigration proceedings, like judicial proceedings,

---

[3] Mejia's claims exclusively focus on his application for suspension of deportation, and he does not challenge the validity of the grounds for deportation that the BIA affirmed in its 1994 order.

must be timely in order to ensure some degree of finality to the process. Nevertheless, we do not address the merits of the district court's decision because we find that the district court lacked jurisdiction over Mejia's § 2241 petition.

**B.    Section 2241 Jurisdiction**

Mejia filed his first habeas petition in September 1997, well after the April 1, 1997, effective date of the Illegal Immigration and Immigrant Responsibility Act of 1996 ("IIRIRA"). Thus, IIRIRA controls this case. This Court recently concluded that Section 242(g) of the Immigration and Nationality Act ("INA"), as amended by the AEDPA and IIRIRA, repeals district court jurisdiction to issue writs of habeas corpus under § 2241 to aliens challenging their removal from the United States or their detention while awaiting removal. Richardson v. Reno, ___ F.3d ___, No. 98-4230 (11th Cir. December 22, 1998). Mejia relied on § 2241 as the sole jurisdictional basis for both of his petitions for habeas relief. As the AEDPA and IIRIRA repealed such jurisdiction, the district court lacked jurisdiction over Mejia's petition.

In Richardson, this Court also determined that IIRIRA's repeal of § 2241 is not unconstitutional because IIRIRA does not eliminate all judicial review of immigration matters. Instead, this Court in Richardson recognized that, under the INA as amended by IIRIRA, Congress has mandated a consolidated form of

13

judicial review of proceedings to remove aliens from the United States – a petition

for review in the court of appeals, after a final removal order has been issued.[4]

For reasons similar to those articulated in Richardson, the repeal of § 2241

jurisdiction over Mejia's petition is not unconstitutional. Specifically, Mejia has

not demonstrated that he has been denied access to judicial review of his 1994

deportation order. The hurdles Mejia currently faces arise because of Mejia's

failure to seek judicial review, or to file a motion to reopen his deportation

proceedings, in a timely manner.[5]

As an initial matter, we note the focus of the judicial review currently sought

by Mejia. In his § 2241 petition, Mejia does not seek direct judicial review of the

1991 deportation order entered by the immigration judge or the 1994 BIA order

affirming the deportation order. Indeed, Mejia indisputably enjoyed the

opportunity for direct judicial review of these decisions, but opted to abscond from

the INS rather than avail himself of such opportunities. Instead, Mejia seeks a

---

[4] The Court in Richardson also noted the minor exception to this unified judicial-review process. INA § 242(e)(2) provides a truncated form of habeas review for non-resident aliens summarily denied admission at ports of entry without any removal proceedings. 8 U.S.C. § 1252(e)(2) (Supp. 1998).

[5] Prior to the AEDPA and IIRIRA, judicial review of deportation orders was available in a petition for review to the court of appeals under INA § 106(a)(1), 8 U.S.C. § 1105a(a)(1) (1995). Likewise, under the INA as amended by IIRIRA, judicial review in the court of appeals remains available of a removal order based on the overstay of a student visa. INA § 242(b)(2) & (9), 8 U.S.C. § 1252(b)(2) & (9) (Supp. 1998).

judicial forum in which he can collaterally attack those orders by asserting that his

deportation proceedings were tainted by his unconstitutional, and later vacated,

state drug conviction. According to Mejia, this claim was unavailable to him until

1997 as a result of the ineffective assistance he received from his counsel during

his state criminal proceedings and deportation proceedings.

Thus, the actual focus of Mejia's present attempt to secure judicial review is

the BIA's November 1998 denial of Mejia's motion to reopen his deportation

proceedings. In his motion to reopen, Mejia asserted generally the same arguments

that he asserts in his § 2241 petition – that his counsel was ineffective in his state

criminal proceeding and that this deficient representation tainted his deportation

proceedings. In his motion to reopen, Mejia also cited case law to support his

argument that a reopening of deportation is warranted when suspension of

deportation has been denied based on a criminal conviction which is subsequently

vacated.[6] Apparently, the BIA was unpersuaded by these arguments and concluded

---

[6] While Mejia may correctly argue that such changed circumstances warrant the reopening of deportation proceedings, the potential impediment to reopening Mejia's deportation proceedings is not with the substantive merits of Mejia's argument but with the timeliness of his motion. This Court finds nothing inherently unconstitutional about time limits especially in light of a prior opportunity for judicial review. The Supreme Court has recognized the profound importance of ensuring a degree of finality in judicial proceedings. Calderon v. Thompson, 118 S. Ct. 1489, 1501 (1998) ("Finality . . . enhances the quality of judging."). Although the Court made this observation in the context of federal collateral review of state criminal proceedings, finality serves similar policies in the context of immigration proceedings. Saiyid v. INS , 132 F.3d 1380, 1386 (11th Cir. 1998) (denying aliens' petition to remand their case to the BIA in order to allow them to present new evidence about changed circumstances relevant to their

15

that its regulations required it to dismiss Mejia's motion as untimely. If any judicial forum exists in which Mejia can assert the arguments rejected by the BIA in its November 1998 order, the proper forum is only in Mejia's petition for review in the court of appeals and not through a § 2241 habeas petition.

As a general principle, judicial review of the BIA's denial of a motion to reopen can be secured through a petition for review. For example, in Stone v. INS, 514 U.S. 386, 405-6 (1995), the Supreme Court held that the ninety-day limitations period[7] for filing a petition of review of a final deportation order is not tolled by the filing of a motion for reconsideration in the BIA. In Stone, the alien facing deportation had filed a petition for review within ninety days of the BIA's denial of his motion "to [r]eopen and/or to [r]econsider" but not within ninety days of his final deportation order. Id. at 389. Accordingly, the Supreme Court held that the court of appeals properly exercised jurisdiction over the petition for review to the extent it challenged the BIA's denial of the motion to reopen or for reconsideration and that the court of appeals properly concluded that it lacked jurisdiction over the

application for suspension of deportation because, inter alia, the petition to remand was an attempt to circumvent time limits on motions to reopen deportation proceedings).

[7] Under the INA prior to the AEDPA and IIRIRA, an alien facing deportation had to file a petition for review of a deportation order within ninety days of the final order unless deportation was based on a conviction for an aggravated felony, in which case the petition had to be filed within thirty days. INA § 106(a)(1), 8 U.S.C. § 1105a(a)(1) (1995). Under the INA as amended by IIRIRA, all petitions for review must be filed within thirty days. 8 U.S.C. § 1252(b)(1) (Supp. 1998).

petition for review of the deportation order itself.  Id. at 390-91; see also Gomez-Gomez v. INS, 681 F.2d 1347, 1348 (11th Cir. 1982) (affirming on a petition for review, the BIA's denial of a motion to reopen which had been filed on June 5, 1981 where the original deportation order had become final in May 1980); Wiedersperg v. INS, 896 F.2d 1179, 1182 (9th Cir. 1990)(exercising jurisdiction over a petition for review of a BIA order denying a motion to reopen which had been filed seven years after the deportation order became final and the alien had been deported).  Thus, several circuits have reversed the BIA's denial of a motion to reopen deportation proceedings.  However, under the INA as amended by IIRIRA, such decisions must be made now only in a petition for review and not through a § 2241 habeas petition.

Therefore, subject to the limitations period in INA § 242(b)(2), Mejia apparently can pursue, and indeed has filed, a petition for review of the BIA's November 1998 denial of his motion to reopen.  This Court expresses no opinion on any procedural or substantive hurdles that Mejia's current petition for review

17

may face.[8]  Such questions will be resolved by this Court in ruling on Mejia's petition for review.[9]

Specifically, this Court does not decide the parameters of the issues to be decided in ruling on Mejia's petition for review.  On the one hand, the petition for review challenging the BIA's denial of Mejia's motion to reopen may focus narrowly on the correctness of the BIA's application of the time limits in 8 C.F.R. § 3.2, which the BIA cited in concluding that Mejia had not filed a timely motion to reopen.  On the other hand, Mejia's petition might properly encompass all issues implicated by Mejia's ineffective-assistance-of-counsel arguments.  All issues relating to the proper scope of the judicial inquiry triggered by the petition for review that Mejia has filed can only be decided by the panel of this Court that reviews Mejia's petition.

---

[8] For example, this Court has not decided whether 8 C.F.R. 3.2 (1998), which now prohibits multiple motions to reopen,  precludes a second motion to reopen when the first motion was filed before the effective date of 8 C.F.R. 3.2 (1998).  Saiyid, 132 F.3d at 1385 n.6.

[9] We note, without deciding, that Mejia apparently does not face one major potential impediment to pursuing a petition for review that the alien in Richardson appeared to face.  INA § 242(a)(2)(C), 8 U.S.C. § 1252(a)(2)(C) (Supp. 1998) provides that "no court shall have jurisdiction to review any final order of removal against" aliens who are removable based on certain criminal offenses.  However, in this case, Mejia is facing deportation for overstaying his visa - not for his drug conviction.  His conviction merely served as the basis for the immigration judge's order, affirmed by the BIA, to pretermit Mejia's application for suspension of deportation.  Therefore, unlike in Richardson, INA § 242(a)(2)(C) does not appear to limit Mejia's opportunity to pursue a petition for review in the court of appeals.

18

In summary, this Court holds that the district court lacked jurisdiction over Mejia's § 2241 petition because IIRIRA repealed § 2241 jurisdiction over such matters, as recognized in <u>Richardson</u>, and that such repeal is not unconstitutional as applied to Mejia.[10]

For the foregoing reasons, we **AFFIRM** the district court's order dismissing Mejia's § 2241 petition but direct that the district court dismiss the petition for a lack of subject-matter jurisdiction. The stay of Mejia's deportation entered by this Court on March 13, 1998 and continued on March 26, 1998 is **VACATED**.

---

[10] As outlined in the history of this case, Mejia filed his first § 2241 petition on September 26, 1997, while his motion to reopen was still pending before the BIA. As this Court recognized in <u>Richardson</u>, the INA, as amended by IIRIRA, expressly requires the exhaustion of administrative remedies prior to the judicial review of a removal order. Therefore, this Court notes that Mejia's petition is also subject to dismissal because at the time it was filed, Mejia had not exhausted the available administrative remedies.