[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 13, 2006
THOMAS K. KAHN
CLERK

No. 05-16416
Non-Argument Calendar
_____

BIA No. A97-130-093

EDWIN ORLANDO HERNANDEZ,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

**(July 13, 2006)**

Before BIRCH, BLACK and BARKETT, Circuit Judges.

PER CURIAM:

Edwin Orlando Hernandez, through counsel, petitions us for review of two orders of the Board of Immigration Appeals ("BIA"). The first order affirmed the Immigration Judge's ("IJ") removal order, and the second order denied Hernandez's motion for reconsideration. We DISMISS Hernandez's petition with regard to the first order because we lack jurisdiction to review it, and we DENY his petition with regard his motion for reconsideration.

## I. BACKGROUND

On 25 March 2003, Hernandez, a citizen of Colombia, arrived in the United States and applied for admission under the Visa Waiver Program. Hernandez later filed an application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"), 8 C.F.R. § 208.16 et seq., claiming persecution based on his political opinion. In his application, he claimed that he was a member of the Juvenile Group of the Liberal Party, and feared torture and death at the hands of the paramilitary if he returned to Colombia.

Hernandez further explained that, shortly after completing high school in Bogotá, he befriended a man by the name of Jairo Pardo, with whom he played pool on several occasions. Pardo expressed interest in what Hernandez was doing for the Liberal Party and, later, revealed that he was a member of the Communist party and the Auto Defense, a paramilitary group, and that he was in charge of

2

distributing flyers in the south side of Bogotá.  On one occasion, Pardo showed Hernandez a bundle of envelopes and told him that the envelopes contained "messages directed by the Paramilitary aimed at businesses and persons of the Community."  Administrative Record ("AR") at 111.  He requested Hernandez's assistance in distributing the envelopes, and Hernandez refused.  Pardo then, displaying a gun, threatened to kill Hernandez if he did not comply.  Hernandez grabbed the envelopes, but never distributed them.  His mother told him to report the incident to the police, but, in light of the threat, he decided not to notify the authorities.  He then went to stay at his aunt's house in Pereira to hide from Pardo.  A few days later, however, Pardo found Hernandez in Pereira, and threatened that the paramilitary would kill him, his mother, and his aunt if he did not return to Bogotá.  This threat prompted Hernandez to come to the United States to seek protection.

In support of his application, Hernandez filed various U.S. Department of State status reports regarding human rights practices in Colombia.  The reports indicated that the activities of paramilitary groups are often done with the alleged complicity of, or in collaboration with, members of the public security forces, military, or police.

At a hearing in July 2003, Hernandez's attorney indicated to the IJ that she had just received some important documents in the case, which included letters

3

indicating that Hernandez's mother had been beaten and hospitalized. The hearing was postponed until the documents could be translated. When the hearing resumed in October of 2003, Hernandez testified that Pardo wanted him to join the Communist Ideologists, which was associated with a paramilitary group in Colombia. He stated, however, that Pardo did not give him a specific name of the paramilitary group to which he belonged. He admitted that Pardo was the only person with whom he had trouble in Colombia and that he was not aware of what the fliers said because he did not open the sealed envelopes. He further admitted that he did not report Pardo's threat to the police. Hernandez further testified that his mother remained in Colombia, where Pardo continued to threaten her and ask about Hernandez's whereabouts, and he believed that the paramilitary group would kill him if he returned.

In an oral decision, the IJ, although previously finding Hernandez to be credible at the hearing denied Hernandez's application for asylum, withholding of removal, and relief under the CAT. The IJ commented that this case was "frankly, way out of the ball park with regard to being able to establish any connection at all between the facts." Id. at 62. The IJ found that Pardo's threat did not have "anything to do with one of the five enumerated categories found [in] the definition of refugee," and, because no one in the government was ever notified of the threat, Hernandez failed to show that anybody associated with the government either

4

participated in, or acquiesced to, Pardo's threat. Id. at 63. The IJ commented, "The case is not specific, it's not detailed, and because of the lack of government involvement, it would be legally unsuitable as well." Id.

Hernandez appealed to the BIA, requesting reversal of the IJ's decision denying his application for asylum and withholding of removal. He submitted a brief, in which he argued that the IJ failed to consider all of the pertinent evidence[1] and should have granted him asylum because he submitted sufficient evidence to meet his burden of proof.[2] On 15 August 2005, the BIA affirmed the IJ's decision, finding that the IJ correctly concluded that Hernandez failed to meet his burden of proof for asylum, withholding of removal, and protection under the CAT. Further, the BIA noted that, on appeal, Hernandez merely restated his claim, "which was carefully considered and properly adjudicated by the Immigration Judge." Id. at 18.

---

[1] In support of his argument, Hernandez listed several documents that he had referred to at the July 2003 hearing, namely, a statement from his mother that she had been threatened and kidnapped by the paramilitary forces, and a medical certification from a hospital showing that she had been beaten. AR at 22. These documents, however, appear nowhere in the record. (See generally id.

[2] Hernandez's brief to the BIA merely stated the facts and the law, but did not articulate any arguments. See id. at 21-35.

On 13 September 2005, Hernandez filed a motion for reconsideration, claiming that the IJ and the BIA erred by denying his application under the CAT.[3] For the first time, Hernandez claimed that he had filed a criminal complaint against Pardo, through proxy, to denounce acts carried out against his mother and aunt when "they failed to locate him."[4] Id. at 11. Hernandez claimed that he was entitled to relief under the CAT because: (1) the authorities were "willfully blind and accepting" of the paramilitaries' illegal acts by ignoring Pardo's threats and his assault on Hernandez's family members, and therefore, they acquiesced to his torture; (2) the IJ found him to be credible, and thus, he sustained his burden that, more likely than not, he would be subject to torture or death if he were to return to Colombia; and (3) his testimony that, even when he moved to different cities in Colombia, the paramilitaries were "always at his heels," proved that moving to a different city would not provide him with a "protective shield" against the paramilitaries. Id. at 13-14. He further argued that the State Department reports confirmed that conditions in Colombia had worsened, and the authorities there were unwilling or incapable to prevent the paramilitaries' criminal activities. Additionally, Hernandez claimed that the BIA erred by issuing a blanket

_____

[3] In his motion for reconsideration, Hernandez did not claim that the BIA erred by denying his claim for asylum or withholding or removal. See id. at 12.

[4] This complaint is not contained anywhere in the record. See generally id.

6

confirmation of the IJ's order, without an independent analysis of all of the evidence presented at the hearing. On 25 October 2005, the BIA denied Hernandez's motion for reconsideration, finding that, because it merely reiterated arguments already made in connection with his appeal, and that already had been evaluated, he failed to show that the BIA's decision was either factually or legally erroneous or that reconsideration was warranted.

There are three issues on appeal: (1) whether we have jurisdiction over this petition with regard to the BIA's decision affirming the denial of asylum, withholding of removal, and CAT relief; (2) whether the BIA abused its discretion in failing to provide a detailed explanation in affirming the IJ's order and denying Hernandez's motion for reconsideration; and (3) whether the BIA abused its discretion in denying Hernandez's motion for reconsideration as to his relief under CAT.

## II. DISCUSSION

A. Jurisdiction Over Petition

By statute, an alien seeking review of a final order of the BIA must file a petition for review within thirty days of the issuance of the final order. 8 U.S.C. § 1252(b)(1). An order of removal becomes final upon, inter alia, the dismissal of an appeal by the BIA. See 8 C.F.R. § 1241.1(a). "[T]he statutory limit for filing a petition for review in an immigration proceeding is 'mandatory and jurisdictional,'

7

[and, therefore,] it is not subject to equitable tolling." Dakane v. U.S. Att'y Gen., 399 F.3d 1269, 1272-73 n.3 (11th Cir. 2005) (per curiam) (quoting Stone v. INS, 514 U.S. 386, 405, 115 S. Ct. 1537, 1549 (1995)). The finality of a removal order is not affected by the filing of a motion to reconsider. Stone, 514 U.S. at 405, 115 S. Ct. at 1549.

In this case, the BIA issued its final order of removal on 15 August 2005, AR at 18, when it affirmed the IJ's decision, and Hernandez filed a motion to reconsider on 13 September 2005, id. at 9. This filing did not toll the deadline for filing his petition for review with our court. See Stone, 514 U.S. at 405, 115 S. Ct. at 1549. Hernandez did not file his petition with our court until 21 November 2005. See Petition for Review. Because Hernandez did not file his petition for review before the thirty-day deadline prescribed by the INA, we do not have jurisdiction to address the merits of the IJ's decision denying his requests for asylum, withholding of removal, and relief under the CAT. See Dakane, 399 F.3d at 1272 n.3. Accordingly, our jurisdiction is limited to reviewing the BIA's 25 October 2005 decision, which denied Hernandez's motion for reconsideration.

B. Whether the BIA Had To Provide a Detailed Explanation in Its Orders

Next, Hernandez argues that the BIA's confirmation of the IJ's decision and its denial of his motion for reconsideration were not consistent with its statutory duty to render a reasoned and independent judgment. Hernandez asserts that,

8

because the BIA's judgment merely affirmed the IJ's denial of remedy, with little explanation and without referring to any of the evidence contained in the record, it is impossible to determine on what grounds the BIA agreed with the IJ. As previously stated, we lack jurisdiction to review the BIA's initial order and will only address his petition for review with regard to his motion for reconsideration.

We review the BIA's denial of a motion for reconsideration for an abuse of discretion. Assa'ad v. U.S. Att'y Gen., 332 F.3d 1321, 1340-41 (11th Cir. 2003), cert. denied, 543 U.S. 917, 125 S. Ct. 38 (2004). The BIA abuses its discretion when it reaches its decision "in an arbitrary or irrational manner." Gomez-Gomez v. INS, 681 F.2d 1347, 1349 (11th Cir. 1349); see also Mickeviciute v. INS, 327 F.3d 1159, 1162 (10th Cir. 2003) (holding that "[t]he BIA abuses its discretion when its decision provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements" (quotations omitted)).

Furthermore, the BIA may affirm, without opinion, the decision of the IJ if "[t]he [BIA] is satisfied, from a review of the record, . . . that the appeal lacks an arguable basis in fact or in law." 8 C.F.R. § 1003.1(d)(2)(i)(D). "[M]eaningful review of the INS's removability determination is not precluded by the brevity of the BIA's summary affirmance decision because an appellate court will continue to have the IJ's decision and the record upon which it is based available for review."

9

Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1289 (11th Cir. 2003) (quotations omitted). Moreover, the BIA's affirmance without an opinion does not demonstrate that the BIA did not review the individual facts of a petitioner's case. Lonyem v. U.S. Att'y Gen., 352 F.3d 1338, 1342 (11th Cir. 2003) (per curiam).

Here, we have the decision of the IJ and the record on appeal to review adequately whether the BIA abused its discretion in denying Hernandez's motion to reconsider. As such, we conclude that the BIA did not abuse its discretion by failing to provide a detailed explanation of its decision denying Hernandez's motion.

C.  Relief under CAT

Finally, Hernandez argues that the BIA erred in confirming the IJ's denial of remedies under CAT. He argues that he was entitled to relief under the CAT because (1) the authorities acquiesced to the paramilitaries' conduct by willfully ignoring and accepting their illegal threats against Hernandez and their assault upon his family; (2) the IJ found him to be credible, and thus, he sustained his burden that, more likely than not, he would be subject to torture or death if he were to return to Colombia; and (3) his testimony proved that moving him to a different city would not provide him with protection from the paramilitaries. He further argues that the State Department reports confirmed that conditions in Colombia had worsened, and the authorities there were unwilling or incapable to prevent the

10

paramilitaries' criminal activities.  Our review of this argument, once again, is limited to the denial of Hernandez's motion for reconsideration.

After the BIA has affirmed an IJ's order of removal, the alien may seek reconsideration on the ground that the BIA has made a legal or factual error.  See 8 U.S.C. § 1229a(c)(6); 8 C.F.R. § 1003.2(b)(1).  A motion for reconsideration must specify the errors of law or fact in the previous order and be supported by pertinent authority.  8 U.S.C. § 1229a(c)(6)(C).  "A motion that merely republishes the reasons that had failed to convince the tribunal in the first place gives the tribunal no reason to change its mind."  Ahmed v. Ashcroft, 388 F.3d 247, 249 (7th Cir. 2004) (noting that a motion to reconsider "is a request that the [BIA] reexamine its decision in light of additional legal arguments, a change of law, or perhaps an argument or aspect of the case which was overlooked" (quotations omitted)).

As an initial matter, courts decide a petition for review only on the evidence contained in the administrative record.  See 8 U.S.C. § 1252(b)(4)(A).  Although, Hernandez referred to facts in his motion for reconsideration, and on appeal, that would appear to support his CAT claim, namely, that his mother and aunt were physically assaulted by the paramilitaries, and that he eventually filed a complaint to denounce the paramilitaries' acts, this evidence is not contained in the record, and thus, we cannot consider it.

11

In reviewing the record, we conclude that the BIA did not abuse its discretion when it denied Hernandez's motion for reconsideration because he did not present persuasive evidence or argument that the BIA had committed an error of law or fact in denying his petition for relief under the CAT.  The IJ determined that Hernandez was not entitled to relief under the CAT because Hernandez failed to show that anybody associated with the government either participated in or acquiesced to Pardo's threat.  See AR at 63.  Although Hernandez, for the first time in his motion for reconsideration, made reference to a complaint that he made to the authorities, this evidence was not part of the factual record as it existed when the BIA rendered its original decision affirming the IJ's order.  See id. at 11.  Thus, this evidence could not form the basis of his motion to reconsider, in which Hernandez merely re-argued the merits of his claim.  Because Hernandez failed to present appropriate grounds for the BIA to re-examine its earlier decision, the BIA did not abuse its discretion in denying his motion for reconsideration.

### III.  CONCLUSION

Hernandez petitioned our court to review two orders of the BIA.  We do not have jurisdiction to review the first, which affirmed the removal order of the IJ, and we conclude that the BIA did not abuse its discretion in denying Hernandez's motion for reconsideration.

**PETITION DISMISSED IN PART, DENIED IN PART**